UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

NEW YORK STATE NURSES ASSOCIATION PENSION
PLAN and ITS TRUSTEES,

                      Plaintiffs,

                    vs.

TEHUM CARE SERVICES, INC. d/b/a CORIZON LLC and
CORIZON HEALTH, INC. f/k/a PRISON HEALTH
SERVICES, INC., PHS AMERICA, CORIZON
CORRECTIONAL MEDICAL ASSOCIATION a/k/a
CORIZON/CORRECTIONAL MEDICAL ASSOCIATES PC
a/k/a CORRECTIONAL MEDICAL SERVICES, INC., CHS
AL, LLC, CHS AZ, LLC, CHS KY, LLC, CHS GA, LLC,
CHS IN, LLC, CHS MO, LLC, CHS KS, LLC, CHS NEW
JERSEY, LLC, CHS NH, LLC, CHS TN, LLC, YESCARE
AR, LLC, CHS IL, LLC, CHS MI, LLC, CHS MD, LLC, CHS
MN, LLC, CHS VA, LLC, GENEVA CONSULTING, LLC,
GENESIS HEALTHCARE, INC., FLACKS GROUP LLC,
MICHAEL FLACKS, PERIGROVE LLC, PERIGROVE 1018
LLC, M2 HOLDCO, LLC, M2 LOANCO, LLC, ENDEAVOR
DISTRIBUTION, LLC, PHARMACORR, LLC,
PHARMACORR HOLDINGS, LLC, PHARMACORR/M2
LLC, M2 EQUITYCO, LLC, M2 PHARMACORR EQUITY
HOLDINGS, LLC, DG REALTY MANAGEMENT LLC,
SEVEN TRADE LLC, VALITÁS INTERMEDIATE
HOLDINGS INC., SIGMA RM, LLC d/b/a SIGMA RISK
MANAGEMENT, LLC, 1528 56TH STREET, LLC, UNITED
STAFFING SOLUTIONS LLC, CORRECT HEALTH
SERVICES, LLC, YESCARE HOLDINGS, LLC (NY),
YESCARE HOLDINGS, LLC (GA), YESCARE
PROFESSIONAL SOLUTIONS, LLC, PHS COMMUNITY
CARE LLC, CORIZON HEALTH OF CALIFORNIA, LLC,
CORIZON HEALTH OF PENNSYLVANIA, LLC, TN
CORRECT HEALTH SERVICES LLC, YITZCHAK
LEFKOWITZ a/k/a ISAAC LEFKOWITZ, SARA ANN
TIRSCHWELL, DAVID GEFNER, ABRAHAM
GOLDBERGER, FAIGY GOLDBERGER, AYODEJI
OLAWALE LADELE, BEVERLY MICHELLE RICE, JAY
LEITNER, TRACY BARTOLI, JIMMY SPROUSE, and
FRANK JEFFREY SHOLEY; XYZ CORPORATIONS 1-10;
and JOHN AND JANE DOES 1-10,

                    Defendants.

-------------------------------------------------------------------------- x

Civil Action No. 1:26-cv-1168 (AMN/ML)

15021793.4
15021793.4

## COMPLAINT

Plaintiff New York State Nurses Association Pension Plan ("Plan") and Its Trustees ("Trustees"), by and through their attorneys, Cohen, Weiss and Simon LLP, allege as follows:

### INTRODUCTION

1.     This is an action by an employee benefit plan and its fiduciary jointly and severally against the Defendants to collect withdrawal liability and statutory damages due pursuant to Sections 502, 515, and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, 1145, and 1451.

### JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to Sections 502(a)(3), 502(e)(1), 502(f), 502(g), 515, and 4301(a), (b) and (c) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(f), 1132(g), 1145, and 1451(a), (b), and (c), and 28 U.S.C. § 1331.

3.     Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Plan's office is located in this district.

### THE PLAN AND CORIZON

4.     Plaintiffs are the Plan and the Trustees of the Plan.

5.     The Trustees are "fiduciaries" of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6.     The Plan is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), that is subject to the withdrawal liability provisions of ERISA.

- 2 -

7.     The Plan is maintained pursuant to a Second Restated Agreement and Declaration of Trust (the "Trust Agreement") and the Third Restated New York State Nurses Association Pension Plan.

8.     The Trustees are the administrators of the Plan.

9.     The Plan is administered at its place of business at 3 Pine West Plaza, Albany, New York 12205.

10.    Pursuant to Sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees are authorized to bring this action on behalf of the Plan and its participants and beneficiaries.

**Corizon**

11.    Tehum Care Services, Inc. d/b/a Corizon LLC and Corizon Health, Inc. f/k/a Prison Health Services, Inc., PHS America, Corizon Correctional Medical Association a/k/a Corizon/Correctional Medical Associates PC a/k/a Correctional Medical Services, Inc. ("Corizon") was a Delaware corporation with a principal place of business at 105 Westpark Drive, Suite 200, Brentwood, Tennessee 37027.

12.    Corizon contracted with state and local governments to provide healthcare services to incarcerated individuals.

13.    Corizon was a party to collective bargaining agreements pursuant to which it was required to, and did, in fact, make contributions to the Plan.

14.    Sara Ann Tirschwell ("Ms. Tirschwell") was Corizon's Chief Executive Officer.

15.    Ms. Tirschwell resides at 3411 Yoakam Boulevard, Unit 2901, Houston, Texas 77006.

- 3 -

15021793.4

**CORIZON'S WITHDRAWAL FROM THE PLAN**

16.     The Trust Agreement provides that, pursuant to applicable law, an employer that withdraws from the Plan is required to pay withdrawal liability.

17.     On or about December 31, 2015, Corizon permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan, thereby withdrawing from the Plan within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

18.     As a result of Corizon's complete withdrawal from the Plan, Corizon became liability to the Plan for withdrawal liability.

19.     By letter dated September 14, 2015, the Plan notified Corizon of the estimated amount of its withdrawal liability.

20.     By letter dated December 16, 2016 (the "Demand Letter"), the Plan notified Corizon that it had affected a complete withdrawal from the Plan and was therefore subject to the payment of withdrawal liability pursuant to Section 4203(a) of ERISA, 29 U.S.C. § 1383(a), the terms of the Plan, and the Trust Agreement.

21.     As explained the Demand Letter, the payment schedule provided for twenty-one (21) quarterly installment payments of $283,755 each, for a total due of $5,228,386 to the Plan and has the first payment to be made within sixty (60) days after the date of the Demand Letter (the "Withdrawal Liability").

22.     Corizon remitted eighteen (18) installment payments towards its Withdrawal Liability in accordance with the payment schedule set forth in the Demand Letter.

23.     However, Corizon has not made the last three (3) installment payments, totaling $774,000, which were due on December 1, 2021, April 1, 2022, and July 1, 2022, respectively (the "Remaining Installments").

- 4 -

15021793.4

24.    By letter dated April 3, 2017 (the "Notice to Cure"), the Plan notified Corizon that, *inter alia*, the Plan had not received a quarterly payment, as required by the Demand Letter.

25.    As explained in the Notice to Cure, if Corizon's failure to pay was not cured on or before June 2, 2017, it would be deemed to be in default of its Withdrawal Liability pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

26.    Further, the Notice to Cure provided that once in default, the Plan would be entitled to require immediate payment of the outstanding amount of Corizon's Withdrawal Liability, plus accrued interest.

27.    As of the date of this Complaint, Corizon has failed to remit payment of the Remaining Installments.

28.    Accordingly, the Defendants are liable for $774,000 in Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

### THE STIPULATION AND CORIZON'S DEFAULT

29.    On or about December 13, 2022, the Trustees, Corizon, and various trades and businesses under common control with Corizon, as the term "common control" is used in Section 4001(b) of ERISA, 29 U.S.C. § 1302, and Section 414(b) and (c) of the Internal Revenue Code of 1986, as amended ("Code") (the "Corizon Controlled Group"),[1] entered a Stipulation of Settlement and Release (the "Stipulation").

---

[1] The following trades and businesses are within the Corizon Controlled Group: (1) Tehum Care Services d/b/a Corizon Health, Inc. f/k/a Prison Health Services, Inc., PHS America, Corizon Correctional Medical Association a/k/a Correctional Medical Services, Inc.; (2) CHS AL, LLC; (3) CHS AZ, LLC; (4) CHS KY, LLC; (5) CHS GA, LLC; (6) CHS IN, LLC; (7) CHS MO, LLC; (8) CHS KS, LLC; (9) CHS NEW JERSEY, LLC; (10) CHS NH, LLC; (11) CHS TN, LLC; (12) YesCare AR, LLC; (13) CHS IL, LLC; (14) CHS MI, LLC; (15) CHS MD, LLC; (16) CHS MN, LLC; (17) CHS VA, LLC; (18) Geneva Consulting, LLC; (19) Genesis Healthcare, Inc.; (20) Flacks Group LLC; (21) Perigrove LLC; (22) Perigrove 1018 LLC; (23) M2 HoldCo, LLC; (24)

15021793.4

30.     Pursuant to the Stipulation, the Corizon Controlled Group acknowledged that it would pay "$500,000 … in full satisfaction of [its] withdrawal liability plus damages" due to the Plan (the "Settlement Amount"), payable in three (3) separate installments.

31.     The Corizon Controlled Group's failure to remit an installment payment on any of the dates specified in the Stipulation constitutes a default.

32.     The Stipulation provides that, in the event of a default by the Corizon Controlled Group, which is not cured within seven (7) calendar days after the Plan transmits written notice of default to Corizon, the "Stipulation shall be declared null and void, with the Plan entitled to enforce the full amount of withdrawal liability plus damages due … [and] the Plan may avail itself to all remedies provided in law and equity …."

33.     The Corizon Controlled Group failed to remit the payments on the dates required by the Stipulation.

---

M2 LoanCo, LLC; (25) Endeavor Distribution, LLC; (26) PharmaCorr, LLC; (27) PharmaCorr Holdings, LLC; (28) PharmaCorr/M2 LLC; (29) M2 EquityCo, LLC; (30) M2 Pharmacorr Equity Holdings, LLC; (31) DG Realty Management LLC; (32) Seven Trade LLC; (33) Valitás Intermediate Holdings; (34) Sigma RM, LLC d/b/a Sigma Risk Management; (35) 1528 56th Street, LLC; (36) United Staffing Solutions LLC; (37) Correct Health Services, LLC; (38) YesCare Holdings, LLC (NY); (39) YesCare Holdings, LLC (GA); (40) PHS Community Care LLC; (41) Corizon Health of California, LLC; (42) Corizon Health of Pennsylvania, LLC; (43) TN Correct Health Services LLC; (44) YesCare Corporation YesCare a/k/a CorrMed Staffing Solutions; (45) CHS TX, LLC; (46) CHS FL, LLC; (47) Corizon Health of New Mexico, LLC; (48) CHS Care TX, LLC; (49) CHS Care NY, LLC; (50) Valitás Health Services; (51) Corizon Health of Maryland, LLC; (52) Corizon Health of Ohio, LLC; (53) Corizon Health of Alabama, LLC; (54) Corizon Health of Kansas, LLC; (55) Corizon Health Clinical Solutions, LLC; (56) Corizon Health of Mississippi, LLC; (57) Corizon Health of Florida, LLC; (58) Corizon Health of Virginia, LLC; (59) Corizon Health of Tennessee, LLC; (60) Corizon Health of Arizona, LLC; (61) YesCare Professional Solutions, LLC; and (62) any other trades and businesses under common control with Corizon as the term "common control" is used in Section 4001(b) of ERISA, 29 U.S.C. § 1302, and Section 414(b) and (c) of the Code that is not named in this list.

34. By letter dated March 10, 2023, the Plan advised the Corizon Controlled Group of their default and reminded the Corizon Controlled Group of their obligation to cure its default under the Stipulation.

35. The Corizon Controlled Group failed to cure their default within seven (7) calendar days, as required by the Stipulation.

36. As of the date of this Complaint, the Corizon Controlled Group remains in default, as they have not remitted any installment payments required by the Stipulation.

37. Accordingly, the Trustees declared the Stipulation null and void.

38. As a result of the Corizon Controlled Group's default under the Stipulation, the full amount of the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs, have been and are now due by the Corizon Controlled Group and as alleged below, the remaining Defendants, to the Plan.

## THE CONTROLLED GROUP

39. Section 4001(b)(1) of ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

40. In determining whether entities are under "common control," ERISA uses the definition of "controlled group" found in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1).

41. The regulations issued under the Code define "members of a controlled group" as "two or more corporations connected through stock ownership …." 26 C.F.R. § 1.414(b)-(1). These regulations describe three different types of controlled groups: a "parent-subsidiary group," a "brother-sister group," or a "combined group." 26 U.S.C. § 1563(a); 26 C.F.R. § 1.414(c)-2.

- 7 -

15021793.4

42. All three types of controlled groups require that the companies be connected through a "controlling interest." *See* 26 U.S.C. § 1563(a)(1) and 26 C.F.R. § 1.414(c)-2(b)(1) (parent-subsidiary group); 26 U.S.C. § 1563(a)(2) and 26 C.F.R. § 1.414(c)-2(c)(1) (brother-sister group); 26 U.S.C. § 1563(a)(2) and 26 C.F.R. § 1.414(c)-2(d) (combined group).

43. Accordingly, Defendants XYZ Corporations 1-10 are fictitious defendants representing any other trade or business under common control with the Corizon Controlled Group.

44. Also, Defendants John and Jane Does 1-10 are fictitious defendants representing any individuals under common control with the Corizon Controlled Group.

45. Upon information and belief, there are other entities that are under common control with the Corizon Controlled Group not identified in this Complaint.

**Division and Draining of Corizon**

46. In the late 2010s to the early 2020s, Corizon began to experience financial issues, stemming primarily from claims by incarcerated individuals alleging mistreatment by Corizon from its provision of healthcare services and the related loss of major contracts with governments.

47. To survive the mounting liabilities and declining revenue, Corizon began to seek opportunities from companies willing to acquire or invest in financially distressed entities.

**Acquisition and Division of PharmaCorr by Flacks Group**

48. PharmaCorr, LLC ("PharmaCorr"), the former pharmacy subsidiary that was wholly owned by Corizon prior to 2021 and an indirect subsidiary of Valitás Health Services, Inc. ("Valitás Health Services")[2], was incorporated in Delaware on February 6, 1996.

---

[2] Valitás Health Services is the entity that made four (4) installment payments of $283,755 each on December 30, 2020, April 1, 2021, July 1, 2021, and October 1, 2021 towards Corizon's

15021793.4

49.     PharmaCorr has a principal place of business at 7400 Plaza Mayor Boulevard, Suite 100, Oklahoma City, Oklahoma 73149.

50.     PharmaCorr is owned by PharmaCorr Holdings, LLC.

51.     Corizon, LLC, PharmaCorr's member, was a Missouri limited liability company.

52.     PharmaCorr Holdings, LLC ("PharmaCorr Holdings") is a Florida limited liability company.

53.     PharmaCorr Holdings has a principal place of business at 7400 Plaza Mayor Blvd, 100, Oklahoma City, Oklahoma 731149.

54.     PharmaCorr Holdings also owns Endeavor Distribution, LLC ("Endeavor").

55.     Endeavor was incorporated in Delaware on April 2, 2019.

56.     Endeavor's registered agent is The Corporation Trust Company, located at Corporation Trust Center 1209 Orange St, Wilmington, Delaware 19801.

57.     PharmaCorr/M2 LLC ("PharmaCorr/M2"), a manager of PharmaCorr Holdings, was incorporated in Oklahoma on June 4, 2021.

58.     PharmaCorr/M2 LLC has a principal place of business at 7400 Plaza Mayor Blvd, Suite 100, Oklahoma City, Oklahoma 731149.

59.     Valitás Intermediate Holdings, Inc. ("Valitás Intermediate Holdings") and M2 Pharmacorr Equity Holdings, LLC are 50.1% and 49.9% members of PharmaCorr/M2, respectively.

---

Withdrawal Liability prior to Corizon's default under the payment schedule set forth in the Demand Letter.

- 9 -

15021793.4

60.    M2 Pharmacorr Equity Holdings, LLC was incorporated on June 4, 2021 in Delaware.

61.    M2 Pharmacorr Equity Holdings, LLC's registered agent is The Corporation Trust Company, located at Corporation Trust Center 1209 Orange St, Wilmington, Delaware 19801.

62.    In June 2020, Flacks Group LLC ("Flacks Group") acquired Corizon's operations and existing liabilities, including PharmaCorr, for approximately $10 million.

63.    Upon information and belief, these liabilities included Corizon's Withdrawal Liability.

64.    According to its website, Flacks Group was founded and is controlled by Michael Flacks.

65.    Also, according to its website, Flacks Group specializes in the acquisition and operational turnaround of medium-sized businesses—i.e., "discounted assets" that other investors "wouldn't touch."

66.    Flacks Group was incorporated in Florida on December 20, 2018.

67.    Flacks Group's status is listed as "inactive" on the Florida Secretary of State website.

68.    However, as of the date this Complaint is filed, Flacks Group maintains active offices Miami (headquarters), New York, Houston, Tokyo, and Paris.

69.    Flacks Group's headquarters in Miami is located at 2 Alhambra Plaza, Suite 1240, Coral Gables, Florida 33134.

70.    Flacks Group's New York office is located at the Trump Tower, 725 5th Avenue, New York, New York 10022.

- 10 -

15021793.4

71.    Flacks Group's Houston office is located at the TotalEnergies Tower 1201, Louisiana Street, Suite 740, Houston, Texas 77002.

72.    Michael Flacks serves as the Chairman, Chief Executive Officer, and Founder of Flacks Group.

73.    James Gassenheimer serves as Flacks Group's Chief Legal Officer. Beginning in late 2020, Flacks Group entered a series of transactions to divide and sell PharmaCorr.

74.    Flacks Group created M2 HoldCo, LLC ("M2 HoldCo") and M2 LoanCo, LLC ("M2 LoanCo") to hold the equity and the secured debt owed by Corizon.

75.    M2 HoldCo became Corizon's ultimate parent company.

76.    M2 HoldCo was incorporated in Florida on June 18, 2020.

77.    M2 HoldCo has a principal place of business at 666 NE 125th St, Ste 212, North Miami, Florida 33161.

78.    In its 2026 Florida Limited Liability Company Annual Report, Abraham Goldberger ("Mr. Goldberger") is listed as an authorized member of M2 HoldCo.

79.    Mr. Goldberger is an individual residing at 1174 59th Street, Brooklyn, New York 11219.

80.    M2 HoldCo is the manager of M2 LoanCo.

81.    M2 LoanCo is Corizon's secured lender.

82.    M2 LoanCo was incorporated in Florida on June 18, 2020.

83.    M2 LoanCo has a principal place of business at 666 NE 125th Street, Suite 212, North Miami, Florida 33161.

84.    M2 LoanCo was organized by James Gassenheimer, as authorized representative and registered agent.

- 11 -

15021793.4

85.     M2 LoanCo's initial manager was Michael Flacks.

86.     Alan Rubenstein is or was the director of M2 LoanCo.

87.     In M2 LoanCo's 2026 Florida Limited Liability Company Annual Report, Alan Rubenstein is listed as M2 LoanCo's authorized member

88.     M2 LoanCo's address is 666 NE 125th Street, Suite 212, North Miami, Florida 33161.

89.     M2 LoanCo's 2026 Florida Limited Liability Company Annual Report lists Yitzchak Lefkowitz a/k/a Isaac Lefkowitz ("Mr. Lefkowitz") as its director.

90.     Mr. Lefkowitz is an individual residing at 1449 57th Street, Brooklyn, New York 11219.

91.     M2 LoanCo has no operations or employees.

92.     On or about June 26, 2020, M2 LoanCo acquired certain loans, in an aggregate principal amount of $109,104,391.08, made by various lenders to borrowers in 2017 including Valitás Health Services, Corizon, LLC, and Corizon, and other loan parties under the credit agreement, including Valitás Intermediate Holdings, Corizon Health of New Jersey, LLC ("Corizon Health of New Jersey"), PHS Community Care LLC ("PHS Community"), PharmaCorr, and Endeavor.

**Perigrove's Acquisition of Corizon and Its Affiliates**

93.     On December 7, 2021, Flacks Group's portfolio of Corizon affiliates, including Corizon, M2 HoldCo, and M2 LoanCo, were acquired by Perigrove 1018 LLC ("Perigrove 1018"), an affiliate of Perigrove LLC ("Perigrove LLC, together with Perigrove 108, are "Perigrove") for undisclosed consideration.

94.     Perigrove 1018 is a private equity fund owned by several individuals.

- 12 -

15021793.4

95.     Perigrove 1018 is a related company with common ownership to Perigrove LLC.

96.     Perigrove 1018 operated in the healthcare space.

97.     Perigrove 1018 is a New York limited liability company.

98.     Perigrove 1018's principal place of business is at 351 Spook Rock Road, Suffern, New York 10901.

99.     Mr. Lefkowitz is an investor, member, and officer of Perigrove 1018.

100.    Perigrove LLC is a New York limited liability company.

101.    Perigrove LLC's principal place of business is at 885 Third Avenue, 29th Floor, New York, NY 10022.

102.    At the time of these purchases, Mr. Lefkowitz, Mr. Goldberger, and David Gefner ("Mr. Gefner"), in their capacities as representatives of Perigrove and with apparent knowledge that Corizon was insolvent, purchased Corizon without revealing their identities to Corizon's former Chief Executive Officer prior to engaging in the transaction.  *See* Various Creditors' Motion to Appoint a Chapter 11 Trustee ¶ 4, *In re: Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Mar. 3, 2025), Dkt. No. 731.

103.    Mr. Gefner resides at 26 South Ridge Road, Pomona, New York 10970.

104.    As a result of the transaction, Perigrove owned or controlled Corizon, M2 HoldCo, M2 LoanCo, Valitás Intermediate Holdings, Valitás Health Services, Corizon Health of New Jersey (a subsidiary of Corizon), Corizon, LLC (a subsidiary of Corizon), and M2/PharmaCorr Holdings, LLC (owner of PharmaCorr), in addition to approximately $30 million in Corizon's assets.

105.    Corizon Health of New Jersey was incorporated in New Jersey on May 6, 2003.

- 13 -

15021793.4

106. M2/PharmaCorr Holdings, LLC is a Florida limited liability company.

107. M2/PharmaCorr Holdings, LLC has a principal place of business at 7400 Plaza Mayor Boulevard, Suite 100, Oklahoma City, Oklahoma 73149.

Geneva's Purported Consulting Services

108. In December 2021, Corizon's immediate parent company, Valitás Health Services, contracted with TN Correct Health Services LLC f/k/a Geneva Consulting, LLC ("Geneva").[3]

109. Valitás Health Services was owned by Valitás Intermediate Holdings.

110. Valitás Intermediate Holdings was incorporated in Delaware on April 11, 2017.

111. Valitás Intermediate Holdings is a special purpose entity.

112. Valitás Intermediate Holdings has no assets or operations other than its ownership interest in Corizon.

113. Mr. Lefkowitz, Jay Leitner ("Mr. Leitner"), and Mr. Gefner are the directors of Valitás Intermediate Holdings.

114. Mr. Leitner works at 885 Third Avenue, Floor 29, New York, New York 10022.

115. Valitás Intermediate Holdings is owned by M2 EquityCo, LLC ("M2 EquityCo").

116. M2 EquityCo was incorporated in Florida.

---

[3] The Tennessee Secretary of State website lists "TN Correct Health Services LLC" as the current legal name used by the entity f/k/a as Geneva.

15021793.4

117.     M2 EquityCo has a principal place of business at 666 NE 125th Street, Suite 212, North Miami, Florida 33161.

118.     In its 2026 Florida Limited Liability Company Annual Report, Mr. Goldberger is listed as an authorized member of M2 EquityCo.

119.     M2 HoldCo is the sole member and manager of M2 EquityCo.

120.     Geneva was incorporated in Delaware on November 16, 2021.

121.     Geneva's principal place of business is located at 1350 Broadway, Suite 403, New York, New York 10018.

122.     Geneva also has 7 World Trade Center, 46th Floor, New York, New York 10007 listed as its main business address in a Status Report generated by the New Jersey Business Gateway, Business Entity Information and Records Service.

123.     Geneva's Status Report generated by the New Jersey Business Gateway, Business Entity Information and Records Service lists the following as "Associated Names" of Geneva: "CHS TX," "CHS FL," "YesCare," "Corizon Health of New Mexico," and "YesCare AL."

124.     Mr. Lefkowitz, Mr. Leitner, Josh Greenwald, Zalman Schapiro, Mr. Gefner, Dovi Goldberger, Hocs Consulting, Frank Jeffrey Sholey ("Mr. Sholey"), Scott King ("Mr. King"), and Bill Carr all have email addresses associated with accounts that, upon information and belief, are associated with Geneva.

125.     Mr. Sholey resides at 16 Leston Lane, Spring Hill, Tennessee 37174.

126.     Geneva is a wholly owned subsidiary of Genesis Healthcare, Inc. ("Genesis").

127.     Geneva and Perigrove 1018 share common directors and authorized representatives, including Mr. Lefkowitz.

- 15 -

15021793.4

128.    Genesis was incorporated in Delaware on October 21, 2005.

129.    Genesis has its headquarters at 101 East State Street, Kennett Square, Pennsylvania 19348.

130.    Under the agreement between Valitás Health Services and Geneva, which was executed by Mr. Lefkowitz as the "Interim CEO" of Valitás Health Services, Geneva would receive an initial retainer fee of $3 million and monthly payments of $500,000.

131.    From December 2021 through May 2022, Geneva received approximately $5.5 million from Valitás Health Services.

132.    Mr. Lefkowitz, in his capacity as the authorized representative of Geneva, admitted that Geneva did not provide any services to Corizon under the agreement between Valitás Health Services and Geneva.

Transactions From Corizon's and Corizon, LLC's Signature Bank Accounts to Corizon's Bank of America Account

133.    Prior to December 2021, Corizon maintained bank accounts at Bank of America.

134.    In December 2021, Corizon and Corizon, LLC each opened bank accounts at Signature Bank and listed individuals from Perigrove as sole signors on those accounts.

135.    From December 2021 through May 2022, approximately $23 million was transferred from Corizon's Bank of America accounts to Corizon's and Corizon, LLC's Signature Bank accounts, which were subsequently transferred to Perigrove.

Transactions Between Corizon's and Corizon, LLC's Signature Bank Accounts and M2 LoanCo, Perigrove DG Realty Management, and PharmaCorr

136.    From December 2021 through November 2022, tens of millions of dollars were transferred from Corizon's and Corizon, LLC's Signature Bank accounts to M2 LoanCo.

137.    From December 2021 through November 2022, transactions were made between Corizon's and Corizon, LLC's Signature Bank accounts and Perigrove DG Realty Management LLC ("DG Realty Management"), and PharmaCorr.

138.    Specifically, on December 27, 2021, $7.5 million was transferred to and from a bank account held by DG Realty Management.

139.    Mr. Lefkowitz stated that the December 27, 2021 transfer was intended to be a short-term loan that became unnecessary.

140.    DG Realty Management is a New York limited liability company.

141.    DG Realty Management's registered agent is Northwest Registered Agent LLC, located at 418 Broadway, Suite North, Albany, New York 12207.

142.    DG Realty Management and Perigrove share common directors and authorized representatives.

Seven Trade

143.    Seven Trade LLC ("Seven Trade") was incorporated in Delaware on February 5, 2021.

144.    Seven Trade was organized by Mr. Gefner.

145.    Seven Trade has an office at 7 World Trade Center, 46th Floor, New York, New York 10007.

146.    Seven Trade's owners are Mr. Lefkowitz, Mr. Leitner, and Mr. Gefner.

147.    In January and February of 2022, Mr. Lefkowitz and Mr. Leitner either attempted to or actually purchased, in their capacities as an directors of Seven Trade, COVID-19 test kits for $2,065,000, which they either planned to immediately resell or actually resold to Corizon, at the time it became insolvent, for $3,251,500 ("COVID Tests Purchase").

148.    The January and February of 2022 transactions were intended to generate an instantaneous $1,161,500 profit for Seven Trade.

149.    At the time of the January and February of 2022 transactions, Mr. Lefkowitz and Mr. Leitner served as the directors of Seven Trade and also of Corizon.

150.    At the time of the COVID Tests Purchase, Corizon, Seven Trade, and Mr. Lefkowitz were aware of the installment payment with respect to Corizon's Withdrawal Liability that had become due on December 1, 2021 that Corizon failed to pay, as well as the obligation to continue to make timely payments in accordance with the Stipulation that Corizon had executed several years prior and had been making installment payments towards.

151.    Corizon, Seven Trade, and Mr. Lefkowitz used the funds received towards the COVID Tests Purchase instead of making payments towards the Withdrawal Liability delinquency.

Sigma Risk Management

152.    Sigma RM LLC d/b/a Sigma Risk Management, LLC ("Sigma Risk Management") was incorporated in New York on October 26, 2022.

153.    Sigma Risk Management has a principal place of business at 1528 56th Street, Suite 2000, Brooklyn, New York 11219.

154.    Mr. Lefkowitz was the organizer and is the director of Sigma Risk Management.

155.    Jennifer Lynne Finger ("Ms. Finger") serves as the Assistant General Counsel of Sigma Risk Management.

156.    Sigma Risk Management is comprised of a group of lawyers who were in-house counsel to Corizon.

- 18 -

15021793.4

157.    On November 1, 2022, Mr. Lefkowitz caused Corizon to enter a services contract with Sigma Risk Management while he was serving as Sigma Risk Management's director.

158.    The terms of the services contract provided that Sigma Risk Management would handle Tehum's professional liability claims in exchange for monthly $150,000 payments.

159.    Even though the automatic stay in the Tehum Bankruptcy (*see infra* "Tehum Bankruptcy") went into effect on February 13, 2023 and resulted in the stay of all professional liability claims, Tehum still continued to pay Sigma Risk Management $150,000 monthly for its alleged services.

160.    Mr. Lefkowitz receives no compensation for his role as the director of Sigma Risk Management.

161.    1528 56th Street, LLC was incorporated on November 14, 2021, two months prior to the closing of the property at which Sigma Risk Management is located.

162.    1528 56th Street, LLC is the owner of the property at 1528 56th Street, Brooklyn, New York 11219.

163.    Mr. Lefkowitz was the organizer of 1528 56th Street, LLC.

United Staffing Solutions

164.    United Staffing Solutions LLC ("United Staffing Solutions") was incorporated in New York on August 30, 2011.

165.    United Staffing Solutions has a principal place of business at 1385 Broadway, 10th Floor, New York, New York 10018.

166.    Faigy Goldberger ("Ms. Goldberger") is United Staffing Solutions' Chief Executive Officer and owner.

167.    Ms. Goldberger resides at 1174 59th Street, Brooklyn, New York 11219.

168.    Ms. Goldberger is Mr. Goldberger's wife.

169.    At one point, Mr. Goldberger served as the Chief Executive Officer of United Staffing Solutions.

170.    In response to a third-party request for proposals ("RFPs") for contracts, YesCare proposed that it use several temporary staffing agencies, including United Staffing Solutions, to supply YesCare's labor pool.

171.    In early 2022, United Staffing Solutions engaged in numerous business transactions with Corizon while Mr. Goldberger was serving as a director and officer of Valitás Intermediate Holdings, as a member of Perigrove 1018 and later, as the director and Vice Chairman of YesCare.

**Creation of Tehum and YesCare: The "Texas Two-Step"**

The Texas Two-Step

172.    In early 2022, Corizon begun a restructuring process known as a divisional merger (colloquially known as the "Texas Two-Step"), whereby Corizon and all of its affiliates with assets and ongoing operations merged into a single entity ("MergeCo").

173.    MergeCo then split into two entities: one entity that was saddled with its historical "unfavorable" liabilities, including the Plan's claim for the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs ("RemainCo") and another entity that was vested with its assets and related "favorable" liabilities ("NewCo").

174.    The liability-laden entity would then file for bankruptcy, resulting in the freezing of creditors' claims against Corizon, including the Plan's Withdrawal Liability claim.

175.    The purpose of the Texas Two-Step was to allow Corizon to minimize disruption to its ongoing business, place Corizon in the business to pursue new contracts, retain its employees, and minimize the risk that Corizon would be forced to liquidate.

- 20 -

15021793.4

176. The following individuals and entities, the majority of whom served on Corizon's management team and subsequently serve on YesCare's management teams, were responsible for orchestrating the Texas Two-Step: Mr. Lefkowitz, Ms. Tirschwell, Ayodeji Olawale Ladele ("Mr. Ladele"), Beverly Michelle Rice ("Ms. Rice"), Mr. King, Mr. Sholey, Ms. Finger, Perigrove M2 HoldCo, and M2 LoanCo.

177. Mr. Ladele resides at 900 North 9th Avenue, Apartment 1002, Philadelphia, Pennsylvania 19123.

178. Ms. Rice resides at 4021 Hallborough Way, Hermitage, Tennessee, 37076.

179. In early 2022, Corizon, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey entered into the Agreement and Plan of Divisional Merger dated May 1, 2022 (the "Divisional Merger Agreement").

"MergeCo"

180. Pursuant to the Divisional Merger Agreement, in May 2022, Perigrove directed Corizon, Valitás Health Services, Corizon, LLC, and Corizon Healthcare of New Jersey to merge into a single entity called "MergeCo."

181. MergeCo was then divided into two entities: Tehum ("RemainCo") and YesCare ("NewCo").

182. Following the divisional merger and in accordance with the terms of the Divisional Merger Agreement, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey ceased to exist.

Tehum ("RemainCo")

183. Pursuant to the Divisional Merger Agreement, RemainCo (a/k/a "Tehum," meaning "abyss" in Hebrew) retained the historical unfavorable liabilities and continued to operate following the divisional merger.

- 21 -

15021793.4

184. Mr. Lefkowitz, Mr. Leitner, and Mr. Gefner are the directors of Tehum.

185. M2 LoanCo and Tehum entered into a funding agreement whereby M2 LoanCo could advance funds, subject to an aggregate cap of $15 million, to Tehum and make earmarked payments to Tehum's creditors that arose prior to the Texas Two-Step.

186. After Tehum retained Corizon's historical unfavorable liabilities, the following entities became vested with membership interests in Tehum pursuant to Schedule 3.01(c) ("RemainCo Assets") of the Divisional Merger Agreement ("Tehum Subsidiaries"): (a) Corizon Health of Maryland, LLC; (b) Corizon Health of Ohio, LLC; (c) Corizon Health of Alabama, LLC; (d) Corizon Health of Kansas, LLC; (e) PHS Community; (f) Corizon Health Clinical Solutions, LLC; (g) Corizon Health of Mississippi, LLC; (h) Corizon Health of Florida, LLC; (i) Corizon Health of Pennsylvania, LLC ("Corizon Health of Pennsylvania"); (j) Corizon Health of California, LLC ("Corizon Health of California"); (k) Corizon Health of Virginia, LLC; (l) Corizon Health of Tennessee, LLC; and (m) Corizon Health of Arizona, LLC.

187. As of the date of this Complaint, most of the Tehum Subsidiaries have ceased to exist, although PHS Community, Corizon Health of Pennsylvania, and Corizon Health of California are still active.

188. Upon information and belief, PHS Community is an affiliate of Corizon, Tehum, and/or YesCare.

189. PHS Community is a Delaware limited liability company incorporated on June 15, 2010.

190. PHS Community has a principal place of business and a mailing address at 103 Powell Court, Brentwood, Tennessee 37027.

191. Upon information and belief, Corizon Health of Pennsylvania is an affiliate of Corizon, Tehum, and/or YesCare.

15021793.4

- 23 -

192.    Corizon Health of Pennsylvania is a Pennsylvania limited liability company incorporated on June 23, 2021.

193.    Corizon Health of Pennsylvania's registered agent is C T Corporation System, 600 N. 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.

194.    Upon information and belief, Corizon Health of California is an affiliate of Corizon, Tehum, and/or YesCare.

195.    Corizon Health of California is a California limited liability company incorporated on June 29, 2021.

196.    Corizon Health of California's principal place of business is at 333 University Avenue, Suite 200, Sacramento, California 95825.

197.    Corizon Health of California uses a mailing address of 103 Powell Court, Brentwood, Tennessee 37027.

YesCare ("NewCo")

198.    Pursuant to the Divisional Merger Agreement, CHS TX, Inc. ("CHS TX") was formed and became vested with Corizon's assets and related favorable liabilities.

199.    Mr. Lefkowitz was one of CHS TX's directors.

200.    At or around the time of the divisional merger, CHS TX was acquired by YesCare Corporation ("YesCare").

201.    YesCare (a/k/a CorrMed Staffing Solutions) was incorporated in Texas on January 26, 2022.

202.    YesCare has a principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

203.    YesCare has an office at 3411 Yoakum Boulevard #2901, Houston, Texas 77006.

15021793.4

204.    Mr. Lefkowitz is a director of YesCare.

205.    Correct Health Services, LLC is a Tennessee limited liability company.

206.    Correct Health Services, LLC has a principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

207.    Correct Health Services, LLC is the 100% managing member of YesCare.

208.    Mr. Lefkowitz is Correct Health Services, LLC's Chief Executive Officer.

209.    Upon information and belief, Mr. Lefkowitz intends to use Correct Health to continue the business operations of YesCare by bidding on new contracts in the name of Correct Health Services, LLC and utilizing the employees and infrastructure of YesCare to divert assets and corporate opportunities to Correct Health Services, LLC while leaving all the liabilities with Tehum and other related parties.

210.    On April 6, 2022, CHS Care NY, LLC ("CHS Care NY") was incorporated in New York.

211.    CHS Care NY has a principal place of business and mailing address at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

212.    Upon information and belief, CHS Care NY is an affiliate of Corizon, Tehum, and/or YesCare.

213.    On April 7, 2022, CHS Care TX, LLC ("CHS Care TX") was incorporated in Texas.

214.    CHS Care TX has a principal place of business at 300 South Jackson St., Waxahachie, Texas 75165.

215.    CHS Care TX's mailing address is 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

15021793.4

- 25 -

216. Mr. Sholey is listed as CHS Care TX's Chief Executive Officer in its Franchise Tax Account Status.

217. As of May 14, 2026, in CHS Care TX's Franchise Tax Account Status, Jimmy Sprouse ("Mr. Sprouse") is listed as its Chief Financial Officer.

218. Mr. Sprouse resides at 1129 Overton Lea Road, Nashville, Tennessee 37220.

219. CHS Care TX's Franchise Tax Account Status lists Mr. King as its Chief Legal Officer.

220. CHS Care TX's Certificate of Formation of Limited Liability Company identified YesCare as its sole manager.

221. 220. CHS Care TX's Certificate of Formation of Limited Liability Company identified Ms. Tirschwell as its sole organizer.

222. On May 11, 2022, YesCare Holdings, LLC ("YesCare Holdings (NY)"). was incorporated in New York.

223. YesCare Holdings (NY) has a principal place of business at 7 World Trade Center, 46th Floor, New York, NY 10007.

224. Shortly after the creation of YesCare, Ms. Tirschwell transferred 95% of the capital stock of YesCare to YesCare Holdings (NY).

225. On August 11, 2022, YesCare Holdings, LLC was incorporated in Georgia ("YesCare Holdings (GA)").

226. YesCare Holdings (GA) has a principal place of business at 7 World Trade Center, 46th Floor, New York, NY 10007, which is the same location that YesCare Holdings (NY) operates from.

- 25 -

15021793.4

227.    Mr. Gefner is listed as an organizer of YesCare Holdings (GA) in its Articles of Organization.

228.    Upon information and belief, YesCare Holdings (GA) is an affiliate of YesCare Holdings (NY), Corizon, Tehum, and/or YesCare.

229.    The majority of Corizon's and its affiliates' directors, officers, authorized representatives, employees, and organizers became the directors, officers, authorized representatives, and employees of YesCare, including: (1) Ms. Tirschwell, the former Chief Executive Officer of Corizon, serves as the Chief Executive Officer and a director of YesCare; (2) Mr. Ladele, the former Executive Vice President and Chief Medical Officer for Corizon, became YesCare's Executive Vice President and Chief Medical Officer; (3) Ms. Rice, the former Corporate Controller for Corizon, became the Corporate Controller for YesCare; (4) Mr. King, the former Chief Legal Officer of Corizon and the Chief Legal Officer of CHS Care TX, became the Executive Vice President and Chief Legal Officer at YesCare; (5) Mr. Sholey, the former Chief Financial Officer at Corizon and the Chief Executive Officer of CHS Care TX, became the Chief Financial Officer and later, the Chief Executive Officer, at YesCare; (6) Ms. Finger, the former Assistant General Counsel at Corizon, became YesCare's Assistant Secretary and Assistant General Counsel; (7) Tracy Bartoli ("Ms. Bartoli"), the former director of Legal Services for Corizon, became the Assistant Secretary of YesCare; (8) Ayodeji Olawale Ladele, the former Executive Vice President and Chief Medical Officer for Corizon, became the Executive Vice President and Chief Medical Officer for YesCare; (9) Mr. Gefner, one of the former directors and officers of Valitás Intermediate Holdings, a member of Perigrove 1018 the organizer of Perigrove LLC, the director of Tehum, and the organizer of Geneva, became the director and Chairman of YesCare; (10) Mr. Goldberger, a former director and officer of Valitás Intermediate Holdings and a member of Perigrove 1018 became the director and Vice Chairman of YesCare; (11) Maya Patel,

- 26 -

15021793.4

the former Secretary of Corizon, became the Assistant Secretary of YesCare; (12) Mr. Lefkowitz, a member and officer of Perigrove 1018 LLC, a former officer and director of Valitás Intermediate Holdings, the authorized signer representing Valitás Health Services in the execution of the "consulting" agreement with Geneva, a former member of M2 LoanCo, a former director of M2 HoldCo, the organizer of Sigma Risk Management (management company established for the purpose of managing Tehum's and YesCare's professional liability claims), the director of Sigma Risk Management, the organizer of 1528 56th Street, LLC, the director of Tehum, and the director of Seven Trade, became the director of YesCare; (13) Jay Leitner, the former officer and director of Valitás Intermediate Holdings, the authorized signer representing Geneva in the execution of the "consulting" agreement with Valitás Health Services, the director of Tehum, and the owner of Seven Trade, became the director of YesCare; and (14) all Corizon employees became YesCare employees.

**Formation of YesCare Entities**

230.    At or around the time of the divisional merger, YesCare formed numerous entities to fulfill the Texas Two-Step objective of obtaining and diverting new business from Corizon/Tehum.

231.    At or around the time of each entity's formation, the corporate formation listings for these entities on the respective Secretary of State websites named Ms. Tirschwell as a manager, in her capacity as an authorized YesCare representative and 3411 Yoakum Road, Suite 2901, Houston, Texas 77006 listed as their principal place of business.

15021793.4

232. On February 11, 2022, YesCare incorporated CHS AL, LLC ("CHS AL") in Alabama.[4]

233. Initially, according to Tehum Bankruptcy filings, Ms. Tirschwell was listed as the contact person and 101 North 1st Avenue, Suite 800, Phoenix, Arizona 85003 was listed as its office address. *See* Complaint, *In re: Tehum Care Services, Inc.*, No. 23-90086, Dkt. No. 2653-10, Exhibit J (Filed State Entities) (the "Bankruptcy Trustee Compl. Ex. J").

234. As of the date of this Complaint, 2 North Jackson St., Suite 605, Montgomery, Alabama 36104 is listed as the office and mailing addresses on the Alabama Secretary of State website.

235. On December 2, 2022, CHS AL was awarded a contract with State of Alabama Department of Corrections.

236. The contract names "CHS AL, d/b/a YesCare" as a party to the agreement.

237. Mr. King's signature is inscribed on the signature line.

238. The contract provides that CHS and/or YesCare would receive a total of $1,064,044,666 from April 1, 2023 through September 30, 2027, representing over $235 million in incremental annual revenue.

239. On February 11, 2022, YesCare incorporated CHS AZ, LLC ("CHS AZ") in Arizona.

---

[4] In the business entity searches on the Tennessee Secretary of State website, "TN Correct Health Services LLC" is the newest iteration of the entity that has used the following prior names: YesCare Services, CHS AL, LLC, CHS Employee Group LLC, CHS TX, Inc., and CHS FL, LLC.

CHS Employee Group, LLC was formed on January 23, 2023, with a principal office address at 351 Spook Rock Rd, Suffern, NY 10901 and a mailing address at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027. As of May 2026, it is inactive as its status has been revoked by the Tennessee Department of Labor & Workforce Development.

- 28 -

15021793.4

240. CHS AZ has an office at 3800 North Central Avenue, Suite 460, Phoenix, Arizona 85012.

241. On the Arizona Secretary of State website, YesCare is listed as its member and manager and Mr. King is listed as an individual at its principal place of business, 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

242. In early 2022, Mr. Lefkowitz, Ms. Tirschwell, Mr. King, and Mr. Sholey decided that, in response RFPs for contracts, they would pitch CHS AZ as a wholly owned subsidiary of YesCare comprised of former Corizon employees that is managed by Geneva, a wholly owned subsidiary of Genesis.

243. In line with this decision, in response to an RFP issued by Arizona Department of Corrections, Rehabilitation & Reentry ("ADOC"), an individual sent a bid from the email address, "Holly.Rawnsley@corisonhealth.com," containing these representations on YesCare letterhead..

244. After ADOC selected YesCare from the candidate pool, it entered a contract that was signed by Mr. King, on behalf of YesCare.

245. On February 21, 2022, YesCare incorporated CHS FL, LLC ("CHS FL") in Florida.

246. Initially, Ms. Tirschwell was listed as CHS FL's contact person and 429 Lenox Avenue, Miami Beach, Florida 33139 was its office address. *See* Bankruptcy Trustee Compl. Ex. J.

247. As of the date of this Complaint, CHS FL's principal place of business and mailing address are listed as 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

248. The Florida Secretary of State website lists Jill Moldrem as an individual at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

15021793.4

249. The Florida Secretary of State website lists YesCare as the sole member and manager and Mr. Sholey, Mr. King, and Mr. Sprouse as the Chief Executive Officer, Chief Legal Officer, and Chief Financial Officer, respectively.

250. On February 21, 2022, YesCare incorporated CHS GA, LLC ("CHS GA") in Georgia.

251. Initially, Ms. Tirschwell was listed as a representative of CHS GA.

252. Initially, 1175 Peachtree Street NE, Atlanta, Georgia 30361 was listed as CHS GA's office address. *See* Bankruptcy Trustee Compl. Ex. J.

253. The Tennessee Secretary of State website currently lists CHS GA's principal place of business as 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

254. On February 21, 2022, YesCare incorporated CHS KS, LLC ("CHS KS") in Kansas.

255. Initially, 7200 West 13th Street, North Wichita, New Hampshire 03301 was listed as CHS KS's office address. *See* Bankruptcy Trustee Compl. Ex. J.

256. The Kentucky Secretary of State website currently lists CHS KS's principal place of business as 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

257. On March 18, 2022, YesCare incorporated CHS NH, LLC ("CHS NH") in New Hampshire.

258. YesCare is listed as CHS NH's sole manager.

259. The New Hampshire Secretary of State currently lists CHS NH's principal place of business and mailing address as 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

260. On March 24, 2022, YesCare incorporated CHS New Jersey, LLC ("CHS NJ") in New Jersey.

15021793.4

261. The New Jersey Secretary of State website currently lists 205 Powell Place, Suite 104, Brentwood, Tennessee 37027 as its principal place of business.

262. On April 4, 2022, YesCare incorporated CHS MO, LLC ("CHS MO") in Missouri. Ms. Tirschwell is listed as an organizer of CHS MO.

263. The Missouri Secretary of State website currently lists CHS MO's principal place of business as 3411 Yoakum Road, Suite 2901, Houston, Texas 77006.

264. In addition, several more entities were formed, starting in late 2022, to fulfill the Texas Two-Step objective of obtaining and diverting new business from Corizon/Tehum.

265. Most of these entities have a principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027, unless otherwise alleged.

266. On August 16, 2022, YesCare incorporated CHS TN, LLC ("CHS TN") in Tennessee.

267. CHS TN's mailing address is 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

268. On November 3, 2022, YesCare incorporated YesCare AR, LLC ("YesCare AR") in Arkansas.

269. YesCare AR's principal place of business is at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

270. The Arkansas Secretary of State website currently lists Ms. Bartoli as YesCare AR's organizer.

271. On May 3, 2022, YesCare incorporated CHS IN, LLC ("CHS IN") in Indiana.

15021793.4

272. CHS IN's principal place of business is at 6688 Hidden Meadow Pass, McCordsville, Indiana 46055.

273. The Indiana Secretary of State website currently lists YesCare as CHS IN's sole manager at 205 Powell Place, Suite 104, Brentwood, Tennessee 370270.

274. On September 21, 2022, YesCare incorporated CHS MN, LLC ("CHS MN") in Minnesota.

275. CHS MN's principal place of business is at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

276. YesCare is CHS MN's sole manager.

277. On October 4, 2022, YesCare incorporated CHS IL, LLC ("CHS IL") in Illinois.

278. CHS IL's principal place of business is at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

279. YesCare is CHS IL's sole manager.

280. On October 4, 2022, YesCare incorporated CHS VA, LLC ("CHS VA") in Virginia.

281. CHS VA's principal place of business is 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

282. In addition, around the time of the divisional merger, Corizon and its affiliates planned to establish more than a dozen other entities listed on an internal document as "To Be Filed" for the purpose of bidding on new contracts and diverting such contracts from Corizon/Tehum, as follows: CHS KY, LLC, CHS MD, LLC, CHS MI, LLC, CHS NM, LLC, CHS PA, LLC, CHS VA, and CHS WY, LLC.

283. On January 26, 2023, YesCare incorporated CHS MD, LLC ("CHS MD") in Maryland.

284. CHS MD's principal place of business is 7240 Parkway Drive, Suite 350, Hanover, Maryland 21076.

285. CHD MD's mailing address is 205 Powell Place, Suite 104, Brentwood, Tennessee 370270.

286. On March 21, 2023, YesCare incorporated CHS KY, LLC ("CHS KY") in Kentucky.

287. CHS KY's principal place of business is 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

288. On July 28, 2025, YesCare incorporated CHS MI, LLC ("CHS MI") in Michigan.

289. The Michigan Secretary of State website currently lists Ms. Bartoli, Assistant Secretary of YesCare, as CHS MI's organizer.

**Other Corizon, Tehum, and YesCare Affiliates**

290. On June 18, 2021, Corizon Health of New Mexico, LLC ("Corizon Health of New Mexico") was incorporated in New Mexico.

291. Mr. King is an organizer of Corizon Health of New Mexico.

292. Upon information and belief, Corizon Health of New Mexico is an affiliate of Corizon, Tehum, and/or YesCare.

293. On January 30, 2025, TN Correct Health Services LLC was incorporated in Tennessee.

294. TN Correct Health Services LLC's principal place of business and mailing address is 205 Powell Place, Suite 104, Brentwood, Tennessee 370270.

- 33 -

15021793.4

295. Upon information and belief, TN Correct Health Services is an affiliate of Corizon, Tehum, and/or YesCare.

296. On November 15, 2024, YesCare Professional Solutions, LLC ("YesCare Professional") was incorporated in New York.

297. The New York Secretary of State website, under on "Professional Employer Organizations Currently Registered PEOs as of 5/1/2026," lists YesCare Professional's address as 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

**THE PLAN'S LAWSUIT, TEHUM BANKRUPTCY, AND
TEHUM DEFAULT UNDER THE LIABILITY RELEASE**

**The Plan's Lawsuit Against Corizon**

298. On May 15, 2023, the Plan filed a complaint in the United States District Court, Northern District of New York (docket no. 1:23-cv-00587-FJS-DJS) against Corizon for the collection of withdrawal liability and associated damages (the "Corizon Action").

299. At the time the Plan filed the complaint in the Corizon Action, it had no notice that Corizon had filed for bankruptcy protection.

300. On June 15, 2023, the Plan requested entry of default against Corizon.

301. On June 16, 2023, the Court entered default against Corizon.

**Tehum Bankruptcy**

302. On February 13, 2023, Tehum voluntarily filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of Texas, Bankruptcy Petition No: 23-90086 (CML) (the "Tehum Bankruptcy").

303. The Plan voluntarily dismissed the Corizon Action without prejudice on June 27, 2023, upon notification that Corizon and Tehum were the same entity.

- 34 -

304.    On August 13, 2023 and January 25, 2024, the Plan filed a proof of claim and an amended proof of claim, respectively, in the Tehum Bankruptcy.  *See* Proof of Claim, *In re: Tehum Care Services, Inc.*, No. 23-90086, Claim No. 752 (dated Jan. 25, 2024); Proof of Claim, *In re: Tehum Care Services, Inc.*, No. 23-90086, Claim No. 677 (dated Aug. 14, 2023).

305.    The amended proof of claim in the Tehum Bankruptcy provided that the Plan's claim was in the amount of $892,530.76, representing the amount of the withdrawal liability principal, interest, and liquidated damages due as of January 25, 2024.

**Tehum's Default Under the Liability Release**

306.    On March 3, 2025, the bankruptcy court entered the order confirming the First Modified Joint Chapter 11 Plan.  *See* Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor, *In re: Tehum Care Services, Inc.*, No. 23-90086, Dkt. No. 2014 ("Confirmation Order"); *id.* Exhibit B (First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor ("Plan of Reorganization")).

307.    The Plan of Reorganization defines "Released Parties" as follows:

> [C]ollectively the following, in each case in its capacity as such with each being a "Released Party": (a) [Tehum]; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committees and their respective members; (d) the Professionals; (e) the GUC Trustee; (f) the PI/WD Trustee; (g) the Settlement Parties; (h) M2 EquityCo LLC; (i) Valitás Intermediate Holdings Inc.; (j) Valitás Health Services, Inc.; (k) M2 Pharmacorr Equity Holdings LLC; (l) Pharmacorr/M2 LLC; (m) Pharmacorr Holdings LLC; (n) Endeavor Distribution LLC; (o) Yes Care Holdings LLC; (p) Sigma RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynne Finger; (y) Frank Jeffrey Sholey; (z) FTI

Capital Advisors, LLC, and for each Entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates; provided, however, that a Non-Released Party shall not be a "Released Party."

308.    The Plan of Reorganization defines "Settlement Parties" as follows: "[C]ollectively, YesCare Corp., its wholly owned subsidiaries (including CHS TX), Geneva Consulting, LLC, Perigrove 1018 Perigrove LLC, M2 HoldCo, M2 LoanCo, and PharmaCorr LLC."

309.    Under the Plan of Reorganization, the Released Parties, including Tehum, were obligated to make periodic payments through September 2027 to fund a cash reserve to satisfy the claims of unsecured creditors, including the Plan.

310.    The Plan opted into this settlement arrangement, agreeing to take a share of this cash reserve in exchange for releasing its claim for the Withdrawal Liability ("Liability Release") as to the Released Parties.

311.    Under the Plan of Reorganization, the Liability Release for Tehum and its affiliates remained in effect only so long as Tehum continued making monthly installment payments into the cash reserve.

312.    On January 26, 2026, the trustee in charge of the cash reserve filed a notice that Tehum failed to make any payments since September 2025 in accordance with the Liability Release.

313.    Tehum and the bankruptcy trustee subsequently agreed to a deal for Tehum to resume payments and avoid a default.

314.    On February 25, 2026, the trustee filed a new notice that Tehum had defaulted again by failing to make the installment payment due on February 17, 2026 in

- 36 -

15021793.4

accordance with the Liability Release.  *See* Notice of Settlement Payment Default and Settlement Payment Default Cure Notice, *In re: Tehum Care Services, Inc.*, No. 23-90086, Dkt. No. 2612.

315.    The Liability Release provided that if Tehum failed to cure its default on or before February 2, 2026, then "all … injunctions, stays, or releases provided in favor of the Released Parties that are in effect under the Plan [of Reorganization] shall be deemed terminated and void and the Channeling Injunction[5] and all protections afforded to the Released Parties set forth in Article IX.I of the Plan shall terminate automatically" and beneficiaries of the cash reserve would "have ninety (90) days from the date of termination to commence Causes of Action[6] against the Released Parties."  *See id.* at 1-2.

316.    Tehum failed to cure its default on or before February 2, 2026, as required by the Liability Release.

317.    On March 4, 2026, the trustee filed the Notice of Failure to Cure Settlement Payment Default; Automatic Termination of Channeling Injunction; and Deadline to Commence Causes of Action Against Released Parties ("Failure to Cure Notice").

---

[5] The "Channeling Injunction" enjoined creditors, including the Plan, from asserting their claims against Tehum in exchange for a share of the cash reserve.  *See* Confirmation Order, Ex. B (Plan of Reorganization) at Art. IX.I.

[6] "Causes of Action" refers to:

> [A]ny claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.

*Id.* at Art. I.A.18.

15021793.4

318.    The Failure to Cure Notice stated that the Plan of Reorganization, along with all litigation releases—including the Liability Release—were void as of March 5, 2026 and that certain creditors, including the Plan, "have ninety (90) days from March 5, 2026, or June 3, 2026 to commence causes of action against the Released Parties."

319.    As a result of Tehum's default under the Liability Release, the Plan was permitted to refile its lawsuit for Withdrawal Liability, plus interest, liquidated damages, and attorney's fees and costs, against Corizon, Tehum, YesCare, and related entities as of March 5, 2026.

## YESCARE AND RELATED ENTITIES' BANKRUPTCIES

320.    On May 8, 2026, YesCare, CHS FL, and CHS TX voluntarily filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central of Illinois, Bankruptcy Petition #: 2:26-bk-01089-FMR ("YesCare Bankruptcy"), Bankruptcy Petition #: 2:26-bk-01087-FMR ("CHS FL Bankruptcy"), and Bankruptcy Petition #: 2:26-bk-01146-FMR ("CHS TX Bankruptcy").

321.    On May 13, 2026, Corizon Health of New Mexico, CHS Care TX, and CHS Care NY voluntarily filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central of Illinois, Bankruptcy Petition #: 2:26-bk-01144-FMR ("Corizon Health of New Mexico Bankruptcy"), Bankruptcy Petition #: 2:26-bk-01146-FMR ("CHS Care TX Bankruptcy"), and Bankruptcy Petition #: 2:26-bk-01145-FMR ("CHS Care NY Bankruptcy," and together with the YesCare Bankruptcy, CHS FL Bankruptcy, and CHS TX Bankruptcy, the "YesCare Entities Bankruptcies").

15021793.4

**Shared Offices and Common Directors, Officers, and Employees**

322.    The following sixteen Corporate Defendants[7] have a principal place of business or a mailing address at 205 Powell Place, Suite 104, Brentwood, Tennessee 37027: Correct Health Services, LLC, CHS Care NY, CHS Care TX, CHS FL, CHS GA, CHS KS, CHS NH, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS MD, CHS KY, TN Correct Health Services LLC, and YesCare Professional.

323.    YesCare and the following eight Corporate Defendants had or currently share a principal place of business at 3411 Yoakum Boulevard #2901, Houston, Texas 77006: CHS AL, CHS AZ, CHS FL, CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, and CHS MO.

324.    The following four Corporate Defendants have a principal place of business address at 7 World Trade Center, 46th Floor, New York, New York 10007: Geneva, Seven Trade, YesCare Holdings (GA), and YesCare Holdings (NY).

325.    The following three Corporate Defendants have a principal place of business at 666 NE 125th St, Ste 212, North Miami, Florida 33161: M2 HoldCo, M2 LoanCo, and M2 EquityCo.

---

[7] For the purposes of this Complaint, "Corporate Defendants" refer jointly and severally to Corizon, PharmaCorr, PharmaCorr Holdings, PharmaCorr/M2 LLC, M2 Pharmacorr Equity Holdings, LLC, Flacks Group, Perigrove Endeavor, Valitás Intermediate Holdings, Inc, M2 HoldCo, M2 LoanCo, M2 EquityCo, Geneva, Genesis, DG Realty Management, 1528 56th Street, LLC, Sigma RM, LLC d/b/a Sigma Risk Management, Seven Trade, United Staffing Solutions, Correct Health Services, LLC, YesCare Holdings (NY), YesCare Holdings (GA), PHS Community, Corizon Health of California, Corizon Health of Pennsylvania, TN Correct Health Services, CHS AL, CHS AZ, CHS KY, CHS GA, CHS IN, CHS MO, CHS KS, CHS New Jersey, CHS NH, CHS TN, YesCare AR, CHS IL, CHS MI, CHS MD, CHS MN, CHS VA, XYZ Corporations 1-10; and John and Jane Does 1-10.

326.    The following three Corporate Defendants have a principal place of business at 7400 Plaza Mayor Boulevard, Suite 100, Oklahoma City, Oklahoma 73149: PharmaCorr, LLC, PharmaCorr Holdings, and PharmaCorr/M2.

327.    Upon information and belief, in addition to CHS FL, CHS Care NY, and CHS Care TX, the following Corporate Defendants are subsidiaries wholly owned and/or managed by YesCare: CHS AL, CHS AZ, CHS KY, CHS GA, CHS IN, CHS MO, CHS KS, CHS New Jersey, CHS NH, CHS TN, YesCare AR, CHS IL, CHS MI, CHS MD, CHS MN, and/or CHS VA.

328.    All Corporate Defendants own or are owned by at least one other Corporate Defendant and/or Individual Defendant (as defined below).

329.    All or nearly all directors, officers, and/or managers for each Corporate Defendant are or have been directors, officers, and managers of another Corporate Defendant.

330.    All former Corizon employees became YesCare employees following the divisional merger.

331.    Corizon's former in-house attorneys were later employed by Sigma Risk Management, a management company established for the purpose of handling legal claims made against Corizon's successors—Tehum and YesCare.

332.    Ms. Tirschwell is listed as a director, officer, organizer, representative, or a point of contact for CHS Care TX (sole organizer), YesCare (director), and most of the Corporate Defendants, as follows: (1) Corizon (Chief Executive Officer); (2) CHS AL (contact person); (3) CHS FL (contact person); (4) CHS GA (representative); and (5) CHS MO (organizer).

333.    The majority of Corporate Defendants were incorporated, organized, or established a few months prior to, during, or within a year after the May 2022 divisional merger.

- 40 -

**Self-Dealing Transactions**

334.    Mr. Lefkowitz and Mr. Leitner, in their capacities as the directors of Seven Trade, planned to buy or bought COVID test kits for the purpose of selling them to Corizon/Tehum at a 57% markup to obtain a net profit of several million dollars, while they served as the directors of Corizon/Tehum.

335.    Mr. Lefkowitz, in his capacity as an investor, member, and officer of Perigrove 1018 entered into a transaction with Flacks Group to acquire Corizon, M2 HoldCo, M2 LoanCo (while Mr. Lefkowitz was a member), Valitás Intermediate Holdings (while Mr. Lefkowitz was an officer and director), Valitás Health Services (while Mr. Lefkowitz served as an authorized representative), Corizon Health of New Jersey, Corizon, LLC, and M2/PharmaCorr Holdings, LLC.

336.    Mr. Leitner, in his capacity as an officer and/or director of Valitás Intermediate Holdings (the parent company of Valitás Health Services), was an authorized signer representing Geneva in the execution of the agreement between Geneva and Valitás Health Services that resulted in a $3 million retainer fee and several monthly payments of $500,000 being paid to Geneva without providing any meaningful services to Valitás Health Services in return.

337.    Ms. Tirschwell served as the Chief Executive Officer of Corizon at the time of the divisional merger, which resulted in the transfer of Corizon's assets and operations to YesCare.

338.    YesCare is an entity in which Ms. Tirschwell has a 5% ownership interest.

339.    United Staffing Solutions engaged in numerous business transactions with Corizon while Mr. Goldberger was serving as a director, officer, and member of several other Corporate Defendants and/or while either Mr. Goldberger and/or Ms. Goldberger was the Chief Executive Officer.

15021793.4

**Diversion of Corizon's Funds From Creditors**

340.    In agreeing to engage with Flacks Group to divide and sell one of Corizon's most profitable subsidiaries, PharmaCorr, during the period in which Corizon was facing mounting liabilities, Ms. Bartoli, Mr. Flacks, Mr. Gefner, Mr. Goldberger, Ms. Goldberger, Mr. Ladele, Mr. Lefkowitz, Mr. Leitner, Ms. Rice, Mr. Sholey, Mr. Sprouse, and/or Ms. Tirschwell (the "Individual Defendants") attempted to siphon funds out of Corizon.

341.    The transaction or attempted transaction involving the purchase of COVID test kits by Seven Trade and Mr. Lefkowitz, Mr. Leitner, and/or Mr. Gefner, in their capacities as directors and agents of Seven Trade, and their immediate resale to Corizon (which was approved by Ms. Tirschwell, in her capacity as Corizon's Chief Executive Officer) at a significant markup to generate nearly $1.2 million in profit when Corizon was insolvent demonstrates their attempt to siphon funds out of Corizon.

342.    The transactions involving the payment of several million dollars to Geneva (which was approved by Mr. Lefkowitz, Mr. Leitner, Mr. Gefner, Mr. Sholey, and/or Mr. King in their capacities as agents of Geneva) by Corizon's immediate parent company, Valitás Health Services, without Valitás Health Services' provision of any services represents an attempt to siphon funds from Corizon.

343.    There were transactions totaling $23 million from Corizon's Bank of America accounts to Corizon's and Corizon, LLC's Signature Bank accounts that were opened in December 2021, all initiated a few months prior to the divisional merger up until the Divisional Merger Agreement was executed.

344.    The $23 million was later transferred to Perigrove.

345.    In addition, tens of millions of dollars were transferred from Corizon's and Corizon, LLC's Signature Bank accounts to Corizon's secured lender (M2 LoanCo), a company

- 42 -

15021793.4

that acquired Corizon and its affiliates (Perigrove), and a potential Corizon affiliate (DG Realty Management).

346.   Upon information and belief, these transactions were further attempts to siphon funds from Corizon.

347.   Tehum's continued monthly payments of $150,000 to Sigma Risk Management for purportedly handling its professional liability claims while the automatic stay in the Tehum Bankruptcy was still in effect (which meant that such claims likely generated no actual work) demonstrate attempts to siphon funds from Corizon.

348.   By design, the Texas Two-Step caused Corizon's funds to be diverted into an entity created for the purpose of housing Corizon's assets and favorable liabilities—*i.e.*, YesCare—and deterred or limited creditors from seeking or fully recovering amounts owed by having the other entity—*i.e.*, Tehum—file for bankruptcy.

349.   Upon information and belief, Defendants' act of causing YesCare, CHS TX, CHS FL, Corizon Health of New Mexico, CHS Care TX, and CHS Care NY, the newly-created entities that house Corizon's assets and favored liabilities and that generate profit to ensure Corizon's continuity, to all file for bankruptcy within days of each other *and* two months after Tehum defaulted under the Liability Release, represents an attempt to divert Corizon's funds from creditors.

**Dissolution of Corizon Without Sufficient Reserves**

350.   At the time Corizon, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey entered into the Divisional Merger Agreement, the Individual Defendants had joint and several knowledge that Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey would be dissolved and that Corizon would survive.

15021793.4

351.    Despite this knowledge, the Individual Defendants did not ensure that Corizon had appropriate reserves to pay off its liabilities.

352.    Specifically, the funding agreement between M2 LoanCo and the entity that emerged from the divisional merger designed to retain Corizon's disfavored liabilities (including the Plan's claim for Remaining Installments), Tehum, set a $15 million ceiling on the amount of funds M2 LoanCo could advance toward Corizon's liabilities.

353.    Upon information and belief, Corizon's liabilities are greater than $15 million.

## Shell Companies

354.    M2 LoanCo has no operations or employees.

355.    Valitás Intermediate Holdings is an entity with no assets or operations other than its ownership interest in Corizon.

356.    On the date Tehum filed for bankruptcy, Tehum had no employees, no operations, and no a bank account.

357.    YesCare does not have any assets because Ms. Tirschwell has transferred 95% of YesCare's capital stock to YesCare Holdings (NY) and Ms. Tirschwell herself owns the remaining 5% of YesCare's capital stock.

## Failure to Pay Withdrawal Liability

358.    To date, Defendants have not made any joint and several payments against the Remaining Installments.

## Additional Amounts Will Become Due and Owing

359.    Upon information and belief, additional amounts will become due and owing during the pendency of this action.

15021793.4

**FIRST CAUSE OF ACTION –**
**BREACH OF CONTRACT AND COMMON LAW**

360.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

361.    The trustees of a multiemployer plan have a fiduciary obligation under ERISA to collect unpaid withdrawal liability owed to the plan by contributing employers.

362.    As a result of the Corizon Controlled Group's failure to pay all amounts due on the Stipulation, the Corizon Controlled Group has defaulted under the Stipulation, and failed to cure its default.

363.    Pursuant to the Stipulation, the Defendants are jointly and severally obligated to the Plan for the full amount of the Withdrawal Liability, plus interest, liquidated damages, and attorney's fees and costs.

364.    As a result of the Defendants' failure to make the payments to the Plan as required under the Stipulation, Ms. Bartoli, Ms. Finger, Mr. Flacks, Mr. Gefner, Mr. Goldberger, Ms. Goldberger, Mr. King, Mr. Ladele, Mr. Lefkowitz, Mr. Leitner, Ms. Rice, Mr. Sholey, and Ms. Tirschwell are jointly and severally personally liable for such obligations, thereby giving rise to an action to enforce the Stipulation under breach of contract and common law.

**SECOND CAUSE OF ACTION –**
**WITHDRAWAL LIABILITY**

365.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

366.    As a result of Corizon's complete withdrawal from the Plan, the Defendants became jointly and severally liable to the Plan for withdrawal liability, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

- 45 -

15021793.4

367.    By reason of Corizon's failure to make withdrawal liability payments, including the Remaining Installments, the Defendants are now jointly and severally in default within the meaning of Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), and the Plan is entitled to immediate payment of the Remaining Installments, plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b).

368.    As a result of the Defendants' joint and several failure to make payments to the Plan as required under the Stipulation, the Stipulation became null and void and the Plan is entitled to bring this cause of action to collect the Remaining Installments.

369.    As a result of Defendants' failure to make payments towards the cash reserve in accordance with the Plan of Reorganization, the Challenging Injunction and the Liability Release became null and void and the Plan is entitled to bring this cause of action to collect the Remaining Installments.

**THIRD CAUSE OF ACTION –
<u>CONTROLLED GROUP LIABILITY</u>**

370.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

371.    Plaintiffs seek to hold the Corporate Defendants jointly and severally liable for payment of the Withdrawal Liability, plus attendant damages based on their status as members of the controlled group.

15021793.4

**FOURTH CAUSE OF ACTION –
AGAINST DEFENDANTS AS ALTER EGO, SINGLE EMPLOYER,
AND/OR JOINT EMPLOYERS WITH ALL OTHER DEFENDANTS**

372.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

373.    Because the Corporate Defendants operated as a single entity, have common ownership, common management, shared employees, shares premises, shared family connections, and there has been and is a lack of arm's length dealings between each and every Corporate Defendant, each and every Corporate Defendant is the alter ego of each and every other Corporate Defendant, and/or all Corporate Defendants were a single and/or joint employer, and the Corporate Defendants are thus jointly and severally liable for the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

374.    Each Corporate Defendant is jointly and severally liable with all other Defendants for any withdrawal liability due under Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), based on its, his, and her alter ego, single employer, and/or joint employer relationship with the other Defendants.

15021793.4

## FIFTH CAUSE OF ACTION – SUCCESSOR LIABILITY[8]

375.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

**Flacks Group is a Successor**

376.    Because there are sufficient indicia of continuity between Flacks Group and (1) PharmaCorr, (2) PharmaCorr Holdings, (3) Endeavor, (4) Corizon, LLC, (5) PharmaCorr/M2, (6) Valitás Intermediate Holdings, (7) M2 Pharmacorr Equity Holdings, LLC, and (8) Corizon, Flacks Group is the successor of these entities.

377.    As the successor, Flacks Group is jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

**M2 HoldCo and M2 LoanCo are Successors**

378.    Because there are sufficient indicia of continuity between (1) M2 HoldCo and (2) M2 LoanCo and (1) PharmaCorr, (2) PharmaCorr Holdings, (3) Endeavor, (4) Corizon, LLC, (5) PharmaCorr/M2, (6) Valitás Intermediate Holdings, (7) M2 Pharmacorr Equity Holdings, LLC, (8) Corizon, and (9) Flacks Group, M2 HoldCo and M2 LoanCo are the successors of these entities.

379.    As the successors, M2 HoldCo and M2 LoanCo are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

**Perigrove is a Successor**

380.    Because there are sufficient indicia of continuity between (1) Perigrove 1018 and (2) Perigrove LLC and (1) M2 HoldCo, (2) M2 LoanCo, (3) PharmaCorr,

---

[8] Corizon Health of New Mexico, LLC is not a named Defendant in this Complaint as it filed for bankruptcy, and the automatic stay is likely applicable to the Plan's claim against it for Withdrawal Liability.

15021793.4

(4) PharmaCorr Holdings, (5) Endeavor, (6) Corizon, LLC, (7) PharmaCorr/M2, (8) Valitás Intermediate Holdings, (9) Valitás Health Services, (10) Corizon Health of New Jersey, (11) M2 Pharmacorr Equity Holdings, LLC, (12) Corizon, and (13) Flacks Group, Tehum and YesCare are successors of Corizon.

381. As the successors, Perigrove 1018 and Perigrove LLC are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

**Tehum and YesCare are Successors**

382. Because there are sufficient indicia of continuity between Tehum and YesCare and (1) Corizon, (2) Valitás Health Services, (3) Corizon, LLC, and (4) Corizon Health of New Jersey, Tehum and YesCare are successors of these entities.

383. Because there are sufficient indicia of continuity between CHS TX and YesCare, YesCare is the successor of CHS TX.

384. As the successors, Tehum and YesCare[9] are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

**Successors of Tehum**

385. Because there are sufficient indicia of continuity between (1) Corizon Health of California, (2) Corizon Health of Pennsylvania, and (3) PHS Community and Tehum, Corizon Health of California, Corizon Health of Pennsylvania, and PHS Community are the successors.

---

[9] YesCare is not a named Defendant in this Complaint as it filed for bankruptcy, and the automatic stay is likely applicable to the Plan's claim against it for Withdrawal Liability.

386.    As the successors, Corizon Health of California, Corizon Health of Pennsylvania, and PHS Community are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

**Successors of YesCare**

387.    Because there are sufficient indicia of continuity between YesCare and (1) Correct Health Services, LLC, (2) CHS Care NY,[10] (3) CHS Care TX,[11] (4) YesCare Holdings (NY), and (5) YesCare Holdings (GA) are successors of Corizon.

388.    Because there are sufficient indicia of continuity between YesCare and CHS AL, CHS AZ, CHS FL,[12] CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, CHS MO, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS VA, CHS MD, CHS KY, and CHS MI, these entities are successors of YesCare.

389.    As the successors, Correct Health Services, LLC, CHS Care NY, CHS Care TX, YesCare Holdings (NY), YesCare Holdings (GA), CHS AL, CHS AZ, CHS FL, CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, CHS MO, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS VA, CHS MD, CHS KY, and CHS MI are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments.

---

[10] CHS Care NY, LLC is not a named Defendant in this Complaint as it filed for bankruptcy, and the automatic stay is likely applicable to the Plan's claim against it for Withdrawal Liability.

[11] CHS Care TX, LLC is not a named Defendant in this Complaint as it filed for bankruptcy, and the automatic stay is likely applicable to the Plan's claim against it for Withdrawal Liability.

[12] CHS FL, LLC is not a named Defendant in this Complaint as it filed for bankruptcy, and the automatic stay is likely applicable to the Plan's claim against it for Withdrawal Liability.

15021793.4

## SIXTH CAUSE OF ACTION – <br> VEIL PIERCING

390.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

391.    The financial operations of the Corporate Defendants have been fully integrated such that they do not have an "arms-length" relationship and consequently the Corporate Defendants operated and/or continue to operate as a single business enterprise.

392.    As such, the Corporate Defendants are jointly and severally liable for the amounts due pursuant to this Action.

393.    Permitting Corporate Defendants to adhere to the fiction of separate corporate existences in this case would be fundamentally unfair and contrary to law and public policy.

394.    The corporate veils of Corporate Defendants should be pierced to hold them jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments, under Sections 1301(b) and 1381(a) of ERISA, 29 U.S.C. §§ 4001(b) and 4201(a).

## SEVENTH CAUSE OF ACTION – <br> AGAINST THE INDIVIDUAL DEFENDANTS

395.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

396.    The Individual Defendants are controlling corporate officials of the Corporate Defendants and knowingly committed fraud against the Plan by creating and orchestrating a scheme to avoid payment of the Remaining Installments by (1) dividing and selling PharmaCorr, (2) draining Corizon of its assets, causing it to be undercapitalized and become insolvent, (3) causing Corizon, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey to undergo a divisional merger to ensure Corizon's profitability while avoiding

15021793.4

payment of its liabilities, (4) freezing creditors' claims by causing Tehum to file for bankruptcy, triggering an automatic stay, (5) failing to make payments towards the cash reserve as required under the Plan of Reorganization, (6) diverting Corizon's assets and favored liabilities and new and profitable engagements to YesCare, resulting in the diversion of new business from Corizon/Tehum, and (7) freezing creditors' claims again by causing YesCare, CHS TX, CHS FL, Corizon Health of New Mexico, CHS Care TX, and CHS Care NY to file for bankruptcy, triggering automatic stays.

397.    The Plan reasonably relied, to its detriment, on the material and false representations and omissions caused by the Individual Defendants, including the Individual Defendants' promise to make payments under the Stipulation and payments towards the cash reserve under the Plan of Reorganization.

398.    The Plan has been harmed by the Individual Defendants' failure to remit payment under the Stipulation, payment under the Plan of Reorganization, and payment towards the Remaining Installments.

399.    The Individual Defendants are jointly and severally liable for any withdrawal liability due under Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), including the Remaining Installments plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), based on their control over the Corporate Defendants and their knowing participation in a scheme to defraud the Plan.

15021793.4

**EIGHTH CAUSE OF ACTION –**
**EVADE AND AVOID**

400.    Plaintiffs repeat and reallege the allegations set forth in the paragraphs above.

401.    Section 502(a)(3) of ERISA provides that a fiduciary may bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan[,]" 29 U.S.C. § 1132(a)(2)(A), or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(2)(B).

402.    Section 4212(c) of ERISA, 29 U.S.C. § 1392(c) provides: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

403.    Upon information and belief, the principal purpose of the acquisition, division, and sale of PharmaCorr by Flacks Group was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

404.    Upon information and belief, the principal purpose of Perigrove's acquisition of Corizon, M2 HoldCo, M2 LoanCo, Valitás Intermediate Holdings, Valitás Health Services, Corizon Health of New Jersey, Corizon, LLC, and M2/PharmaCorr Holdings was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

405.    Upon information and belief, the principal purpose of the purported "consulting" agreement and subsequent transactions totaling $5.5 million between Geneva and Valitás Health Services was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

15021793.4

406.    Upon information and belief, the principal purpose of the transactions from Corizon's Bank of America account and Corizon's and Corizon, LLC's Signature Bank accounts was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

407.    Upon information and belief, the principal purpose of the transactions from Corizon's and Corizon, LLC's Signature Bank accounts to M2 LoanCo, Perigrove DG Realty Management, and PharmaCorr was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

408.    Upon information and belief, the principal purpose of the Texas Two-Step, including the Divisional Merger Agreement and the creation of MergeCo, Tehum, and YesCare, was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

409.    Upon information and belief, the principal purpose of vesting membership interest in Tehum in Corizon Health of California, Corizon Health of Pennsylvania, and PHS Community under the Divisional Merger Agreement was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

410.    Upon information and belief, the principal purpose of YesCare's acts of incorporating, organizing, or establishing or planning to incorporate, organize, or establish following entities was to fulfill the Texas Two-Step objective of obtaining and diverting new business from Corizon/Tehum in order to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan: CHS AL, CHS AZ, CHS KY, CHS GA, CHS IN, CHS MO, CHS KS, CHS New Jersey, CHS NH, CHS TN, YesCare AR, CHS IL, CHS MI, CHS MD, CHS MN, CHS NM, LLC, CHS PA, LLC, CHS VA, CHS WY, LLC, CHS TX, CHS FL, Corizon Health of New Mexico, CHS Care TX, and CHS Care NY.

15021793.4

411.    Upon information and belief, the principal purpose of Corizon, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey creating and vesting membership interest in Tehum in the Tehum Subsidiaries under the Divisional Merger Agreement was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

412.    Upon information and belief, the principal purpose of Tehum's continued monthly payments of $150,000 to Sigma Risk Management for purportedly handling its professional liability claims while the automatic stay in the Tehum Bankruptcy was still in effect was to evade and avoid the payment of Corizon's liabilities, including the Remaining Installments to the Plan.

413.    Accordingly, the amounts due to the Plan should be jointly and severally enforced and collected from the Corporate Defendants as if they were Corizon.

### NINTH CAUSE OF ACTION – FRAUDULENT CONVEYANCE

414.    Plaintiffs repeat and reallege the allegations set forth above.

415.    New York Uniform Voidable Transactions Act ("NY UTVA") § 273(a) provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
> >
> > (2) without receiving transfer or obligation, and the debtor:
> >
> > > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

- 55 -

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

416.    NY UTVA § 273(b) states:

In determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

417.    NY UTVA § 274(a) provides: "A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

418.    NY UTVA § 271 states that a debtor is insolvent "if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets" and that if the debtor is "generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent."

- 56 -

419.    NY UTVA § 276 provides: "In an action for relief against a transfer or obligation … a creditor … may obtain: (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure: (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property; (ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or (iii) any other relief the circumstances may require.  It further provides: "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."

**The Corporate Defendants are Insolvent**

420.    As Corizon defaulted under the Stipulation, Tehum defaulted twice under the Plan of Reorganization by failing to make payments to fund the cash reserve, the Plan was made aware of the Tehum Bankruptcy, YesCare Entities Bankruptcies, and Corizon's liabilities, and the Corporate Defendants have not made any payments towards the Remaining Installments to date, the Plan has reason to believe that the Corporate Defendants, jointly and severally, have been insolvent within the meaning of NY UTVA § 271 since early 2020 and have continued to remain insolvent to the time this Complaint is filed.

**Acquisition of Corizon and Its Affiliates by Perigrove**

421.    In acquiring Corizon, M2 HoldCo, M2 LoanCo, Valitás Intermediate Holdings, Valitás Health Services, Corizon Health of New Jersey, Corizon, LLC, and M2/PharmaCorr Holdings, in addition to approximately $30 million in Corizon assets, Perigrove and Mr. Lefkowitz, Mr. Goldberger, and Mr. Gefner, in their capacities as Perigrove

- 57 -

15021793.4

representatives, possessed actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan.

422.    Thus, Perigrove's acquisition of Corizon and its affiliates and Corizon's assets is voidable, as it violated NY UTVA § 273(a).

423.    Upon information and belief, Corizon did not receive a reasonably equivalent value in exchange for Perigrove's acquisition of Corizon and its affiliates and Corizon's assets.

424.    Thus, Perigrove's acquisition of Corizon and its affiliates and Corizon's assets is voidable, as it violated NY UTVA § 274(a).

425.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for Perigrove's acquisition of Corizon and its affiliates and Corizon's assets, including avoidance of Perigrove's acquisition to the extent necessary to satisfy an amount equal to the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

**Transactions Involving Corizon's and Corizon, LLC's Signature Bank Accounts**

426.    The Corporate Defendants' transfers totaling approximately $23 million from Corizon's Bank of America accounts to Corizon's and Corizon, LLC's Signature Bank accounts and the subsequent transfers of these funds to Perigrove were made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan.  Thus, these transfers are voidable, as they violated NY UTVA § 273(a).

427.    The Corporate Defendants' transfers of funds from Corizon's and Corizon, LLC's Signature Bank accounts to M2 LoanCo and transfers between Corizon's and Corizon, LLC's Signature Bank accounts and Perigrove DG Realty Management, and PharmaCorr (1) were made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan, and (2) Corporate Defendants acting on behalf of Corizon were engaged or were about to engage

15021793.4

in a business or a transaction for which Corizon's remaining assets were unreasonably small in relation to these transfers.

428.    Thus, these transfers are voidable, as they violated NY UTVA § 273(a).

429.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for these transactions involving Corizon's and Corizon, LLC's Signature Bank accounts, including avoidance of all transfers to the extent necessary to satisfy an amount equal to the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

**Seven Trade COVID Tests Purchase**

430.    The COVID Tests Purchase, which was intended to generate or actually generated $1,161,500 in profit for Seven Trade, (1) was made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan, and (2) Corporate Defendants acting on behalf of Corizon in the transaction were engaged or were about to engage in a transaction for which Corizon's remaining assets were unreasonably small in relation to the COVID Tests Purchase.

431.    Thus, the COVID Tests Purchase is voidable, as it violated NY UTVA § 273(a).

432.    The COVID Tests Purchase represents Corizon's failure to receive a reasonably equivalent value in exchange for the COVID test kits.  Thus, the COVID Tests Purchase is voidable, as it violated NY UTVA § 274(a).

433.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for COVID Tests Purchase, including avoidance of the COVID Tests Purchase to the extent necessary to satisfy an amount equal to the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

15021793.4

**Sigma Risk Management's Handling of Liability Claims During the Automatic Stay**

434.    Tehum's payments to Sigma Risk Management for purportedly performing work on professional liability claims Tehum incurred while the automatic stay in the Tehum Bankruptcy was still in effect (1) were made with the actual intent to hinder, delay, or defraud Corizon's/Tehum's creditors, including the Plan, and (2) Corporate Defendants acting on behalf of Corizon/Tehum were engaged or were about to engage in a business or a transaction for which Corizon's/Tehum's remaining assets were unreasonably small in relation to these transfers.

435.    Thus, these payments are voidable, as they violated NY UTVA § 273(a).

436.    In making these payments to Sigma Risk Management, Tehum did not receive any reasonably equivalent value in exchange, as it was unlikely that there was any work to be done on Tehum's professional liability claims.  Thus, these payments are voidable, as they violated NY UTVA § 274(a).

437.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for Tehum's payments to Sigma Risk Management, including avoidance of such payments to the extent necessary to satisfy an amount equal to the Remaining Installments, plus interest, liquidated damages, and attorney's fees and costs.

**The Transfer of Corizon's Liabilities to "RemainCo" (Tehum)**

438.    The transfer of Corizon's liabilities to Tehum pursuant to the Divisional Merger Agreement was made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan.  Thus, the transfer is voidable, as it violated NY UTVA § 273(a).

439.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for the transfer of Corizon's liabilities to Tehum.

15021793.4

**The Transfer of Corizon's Assets to "NewCo" (CHS TX and YesCare)**

440.    The transfer of Corizon's assets to CHS TX (subsequently acquired by YesCare) pursuant to the Divisional Merger Agreement was made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan.  Thus, the transfer is voidable, as it violated NY UTVA § 273(a).

441.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for the transfer of Corizon's assets to CHS TX and YesCare.

**Ms. Tirschwell's Transfer of Stock to YesCare Holdings (NY)**

442.    Ms. Tirschwell's transfer of 95% of YesCare's capital stock to YesCare Holdings (NY) was made with the actual intent to hinder, delay, or defraud Corizon's creditors, including the Plan.

443.    Thus, the transfer is voidable, as it violated NY UTVA § 273(a).

444.    The Plan is therefore entitled to obtain relief under NY UTVA § 276 for the transfer of YesCare stock to YesCare Holdings (NY).

**TENTH CAUSE OF ACTION –
PERSONAL LIABILITY FOR WITHDRAWAL LIABILITY**

445.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

446.    The Defendants' failure to make the payments to the Plan as required under the Stipulation, failure to make payments under the Plan of Reorganization, and failure to remit payment towards the Remaining Installments gives rise to joint and several personal liability by the Individual Defendants, due in part to the fraud alleged herein, in an action to enforce the Stipulation under breach of contract and common law, under ERISA and the Code, and under any other applicable statutes, regulations, or theories of liability.

- 61 -

15021793.4

- 62 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment jointly and severally against the Defendants as follows:

447.    Declaring the Individual Defendants jointly and severally personally liable for the obligation to remit payments to the Plan under the Stipulation;

448.    Declaring that Defendants are jointly and severally in default of the Stipulation, rendering it null and void;

449.    Declaring that because of the Defendants' joint and several default, the Plan is entitled to bring all the causes of action set forth in this Complaint;

450.    Declaring that, by reason of Corizon's failure to make Withdrawal Liability payments, including the Remaining Installments, Defendants are now jointly and severally in default within the meaning of Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A);

451.    Declaring that, because of Corizon's failure to make Withdrawal Liability payments, the Plan is entitled to immediate payment of the Remaining Installments, pursuant to Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs from Defendants pursuant to

- 62 -

15021793.4

ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B);

452.    Declaring the Corporate Defendants, jointly and severally, are in a singular controlled group;

453.    Declaring YesCare, CHS TX, CHS FL, Corizon Health of New Mexico, CHS Care TX, and CHS Care NY as part of the singular controlled group;

454.    Ordering the Defendants jointly and severally to identify all members of Defendants' controlled group;

455.    Declaring the Corporate Defendants jointly and severally liable for payment of the Withdrawal Liability, including the Remaining Installments, plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs based on their status as members of the controlled group under Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1);

456.    Declaring each Corporate Defendant the alter ego of each other Corporate Defendant, and/or declaring all Corporate Defendants a single and/or joint employer;

457.    Declaring that, based on the Corporate Defendants' statuses as alter ego and/or single and/or joint employers, the Corporate Defendants are jointly and severally liable for the Withdrawal Liability, including the Remaining Installments, under Section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b);

- 63 -

458.    Declaring that the Flacks Group is a successor of (1) PharmaCorr, (2) PharmaCorr Holdings, (3) Endeavor, (4) Corizon, LLC, (5) PharmaCorr/M2, (6) Valitás Intermediate Holdings, (7) M2 Pharmacorr Equity Holdings, LLC, and (8) Corizon;

459.    Declaring that M2 HoldCo and M2 LoanCo are successors of (1) PharmaCorr, (2) PharmaCorr Holdings, (3) Endeavor, (4) Corizon, LLC, (5) PharmaCorr/M2, (6) Valitás Intermediate Holdings, (7) M2 Pharmacorr Equity Holdings, LLC, (8) Corizon, and (9) Flacks Group;

460.    Declaring that Perigrove 1018 and Perigrove LLC are successors of (1) M2 HoldCo, (2) M2 LoanCo, (3) PharmaCorr, (4) PharmaCorr Holdings, (5) Endeavor, (6) Corizon, LLC, (7) PharmaCorr/M2, (8) Valitás Intermediate Holdings, (9) Valitás Health Services, (10) Corizon Health of New Jersey, (11) M2 Pharmacorr Equity Holdings, LLC, (12) Corizon, and (13) Flacks Group;

461.    Declaring that Tehum and YesCare are successors of (1) Corizon, (2) Valitás Health Services, (3) Corizon, LLC, and (4) Corizon Health of New Jersey;

462.    Declaring that Corizon Health of California, Corizon Health of Pennsylvania, and PHS Community are successors of Tehum;

463.    Declaring that (1) Correct Health Services, LLC, (2) CHS Care NY, (3) CHS Care TX, (4) YesCare Holdings (NY), and (5) YesCare Holdings (GA) are successors of Corizon;

464.    Declaring that CHS AL, CHS AZ, CHS FL, CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, CHS MO, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS VA, CHS MD, CHS KY, and CHS MI are successors of YesCare;

465.    Declaring that, based on their statuses as successors, Correct Health Services, LLC, CHS Care NY, CHS Care TX, YesCare Holdings (NY), YesCare Holdings (GA),

CHS AL, CHS AZ, CHS FL, CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, CHS MO, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS VA, CHS MD, CHS KY, and CHS MI as successors, Correct Health Services, LLC, CHS Care NY, CHS Care TX, YesCare Holdings (NY), YesCare Holdings (GA), CHS AL, CHS AZ, CHS FL, CHS GA, CHS KS, CHS NH, CHS New Jersey, LLC, CHS MO, CHS TN, YesCare AR, CHS IN, CHS MN, CHS IL, CHS VA, CHS MD, CHS KY, and CHS MI are jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments, plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs;

466.    Declaring that the financial operations of Corporate Defendants have been fully integrated such that they do not have an "arms-length" relationship and that the Corporate Defendants operated and/or continue to operate as a single business enterprise;

467.    Piercing the corporate veils of each Corporate Defendant to hold them jointly and severally liable for Corizon's Withdrawal Liability, including the Remaining Installments, plus accrued interest at the rates set forth in the Plan, liquidated damages, and attorney's fees and costs, Sections 1301(b) and 1381(a) of ERISA, 29 U.S.C. §§ 4001(b) and 4201(a);

468.    Declaring that the Individual Defendants knowingly committed fraud against the Plan by creating and orchestrating a scheme to avoid payment of the Remaining Installments by (1) dividing and selling PharmaCorr, (2) draining Corizon of its assets, causing it to be undercapitalized and become insolvent, (3) causing Corizon, Valitás Health Services, Corizon, LLC, and Corizon Health of New Jersey to undergo a divisional merger to ensure Corizon's profitability while avoiding payment of its liabilities, (4) freezing creditors' claims by causing Tehum to file for bankruptcy, triggering an automatic stay, (5) failing to make payments towards the cash reserve as required under the Plan of Reorganization, (6) diverting Corizon's

- 65 -

15021793.4

assets and favored liabilities and new and profitable engagements to YesCare, resulting in the

diversion of new business from Corizon/Tehum, and (7) freezing creditors' claims again by

causing YesCare, CHS TX, CHS FL, Corizon Health of New Mexico, CHS Care TX, and CHS

Care NY to file for bankruptcy, and triggering an automatic stay; and

469.    Ordering the Defendants jointly and severally to pay the Plan:

(a)    all unpaid withdrawal liability due pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A) and 1451(b);

(b)    interest on the unpaid withdrawal liability pursuant to ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b);

(c)    an amount equal to the greater of (a) interest or (b) an amount not to exceed twenty percent (20%) of the withdrawal liability pursuant to ERISA Sections 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(C), and 1451(b);

(d)    the reasonable attorney's fees and costs of this action pursuant to ERISA Sections 502(g)(2)(D) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(D) and 1451(b); and

15021793.4

- 67 -

    (e)     granting such other and further relief as the Court deems

appropriate.

Dated: New York, New York
       June 3, 2026

                      By:   */s/ Michael S. Adler*
                             Michael S. Adler
                             Jenny Lam *(admission pro hac vice to be filed)*
                             COHEN, WEISS AND SIMON LLP
                             909 Third Avenue, 12th Floor
                             New York, New York 10022-4731
                             (212) 563-4100
                             madler@cwsny.com
                             jlam@cwsny.com

                             Counsel for Plaintiffs

- 67 -

15021793.4